Nivis Martin, case number 16-11002. Mr. Coriglio. May it please the court, counsel. Good morning once again, this is Jerry Coriglio on behalf of Nivis Martin who's present today in court. In this case, the district court erred in determining that Bank of America home loans was a victim under the MVRA. And the government changed their position on why Bank of America home loans was a victim from the first appeal to the restitution hearing, the second restitution hearing. Initially, going back to the court's opinion in this case, the reason why Bank of America home loans was determined to be a victim under the MVRA was because they were a successor lender. So that's the position that the government took the first time. Now they're taking the position that... This is, excuse me, this, the Bank of America loan, for lack of a better term, originated with whom? Who started with that one? That was with First Franklin. Okay. And now they're taking the position that Bank of America home loans basically acquired the loss through a series of mergers and acquisitions when they took over Merrill Lynch. But it became apparent in the evidentiary portion of the restitution hearing that we really don't know who the owner of this loan actually was. And the reason why I say that is because the government called the witness, Ms. Davids from Bank of America, that basically had the servicing part of the file. And I specifically asked her if we knew who the owner of the loan was, and all she could testify to was that Bank of America home loans was the servicer of the loans. This is at the time of the second restitution hearing on remand? Correct. Correct. And at the end of the day, the government took the position that there was a short sale, which there was, and that because it showed on the HUD in the short sale that First Franklin Loan Services received the payment, that the loan was never sold. However, I think this entity called First Franklin Loan Services clearly shows that they were a servicer. And that's how Bank of America acquired the file. I think it's important for the court to determine that how Bank of America came in possession of the file. They came in possession of the file because Home Loan Services, which may or may not be the same entity as First Franklin Loan Services, was servicing this loan for First Franklin. I thought that at the time of the short sale, First Franklin received the proceeds, and a different entity, this Home Loan Services, was the servicer. No. And that's what's unclear about this whole thing, and that's why... Because if First Franklin got the proceeds, then it seems to me that that is at least some evidence that it owned the loan. Right. But what it says on the HUD is First Franklin Loan Services, not First Franklin. We don't know if that's the same entity. But Home Loan Services was the servicer, correct, at the time of the short sale? Correct. That's what it appears from the records, that Home Loan Services was the servicer at the time of the short sale. We don't know if First... Well, there can't be two servicers. Right. But First Franklin Loan Services may be the same entity as Home Loan Services. This payment didn't go to First Franklin. All it says on the HUD is First Franklin Loan Services. And when you review the servicing records in the case, there's no indication of who actually owned the loan. And it goes back to the testimony at the trial. One of the underwriters from First Franklin testified, and I specifically asked her, is First Franklin selling these subprime loans, which is the loan in question here, were they all being resold to Wall Street? Well, you say that at page 12 of your brief, and then I looked at the section that you cite, page 183 of Record Entry 218, and it doesn't say that. It's a general reference to these loans generally, but not to these specific loans. Do you have any other citation to the record that supports that position? No. The question was asked at trial in a general fashion, and not to this specific loan. These were questions about, general questions about packaging subprime loans, not these particular loans. Well, this particular loan was a subprime loan. So, but it wasn't- The testimony did not refer to these particular loans. It referred to generally packaging subprime loans. Right, packaging all of them. The witness said she didn't have specific information about these loans. Right, as to who suffered the loss on these loans. That's exactly what the underwriter said. But at the end of the day, we have to go back to the original sentencing and our original position back on April 29, 2014. I was objecting at the original sentencing, asking for some type of affidavit showing ownership of these loans, and we just don't have that in the case. And that's why we believe that there's not sufficient evidence for the government to prove by a preponderance of the evidence that Bank of America actually owned this loan at any point as a successor in interest. What did the district court, I mean, you obviously think the district court got it wrong, but what was the district court's rationale on the Bank of America side? Why did the district court believe that there was enough? Mainly because, my opinion is because that Ms. Davids testified that Bank of America suffered the loss in this case because of their relationship of acquiring this from Merrill Lynch. Acquiring the loan servicing from Merrill Lynch. Was there testimony either at the first or second restitution hearing? With regards to what the specific rights, duties, and responsibility of BOA as servicer were in this case? I mean, you can obviously, we all have an idea of what a general servicer does, but you can certainly contract out certain rights, duties, or responsibilities. You can say I'll do X, Y, and Z, but not A, B, and C. And I'll pay less for it or pay more for it. Was there any testimony about what Bank of America's duties were as a servicer? Not to the best of my recollection, Judge. I don't think we got into that level of detail on what their rights and duties were as a servicer. And that brings me to, and basically that, the fact that the government first argued that Bank of America was a successor lender, and now they're saying that basically they're entitled to the loss through this takeover. I think goes to show that the government doesn't really know who the owner of these loans were. I don't think anyone does, based on this record. And that's also evident with this other loan that's at issue. Government came before the court and said that One West is the owner of the loan. And then we come to find out at the second restitution hearing that it's not One West. It's FDIC as the receiver. I mean, that just goes to the whole confusion as to who actually owns these loans to be a victim under the MVRA. Getting to the- Well, do you think, putting aside for a moment, the government's change of position, do you think the district court got it wrong with regards to the so-called FDIC loan? And acquiring it through its receivership? The FDIC loan is a interesting issue, and I think it's a question of first impression. So, with respect to the FDIC being a victim under the MVRA, Documentary 228.1 was a memorandum of understanding that the government argues, and the district court accepted in finding the FDIC as a victim. But looking at that memorandum of understanding's rationale, I agree with most of it, but I don't agree with the legal conclusion in it. Basically, if you go along with the proposition that the proceeds from the, or the loss suffered by the bank fraud is property of the institution and not its depositors, creditors, or shareholders, you have the FDIC being a victim based on those same individuals, those depositors, creditors, or shareholders. And therefore, I believe it's too attenuated to be a victim under the MVRA. Do you have any case authority, or other authority, that indicates that the FDIC can't be a victim under the MVRA? No, I think- I haven't found any cases. Are you aware of any? No, I think it's a question of first impression. It's an interesting issue. But I just believe it's too attenuated in this case to be a victim under the MVRA. And once again, just going back to, I think, the whole theme of this case, we don't really know who owns these loans. I mean, originally, the government got up in front of this court and argued, in the district court, and argued that One West was the owner of these loans. With respect to valuation, basically, in the first appeal, this court was very specific and said that the district court just can't default to the original loan amount in determining restitution. And basically, that's exactly what happened when we went back down on remand and did the second restitution hearing. The government, the district court just put aside, assuming, arguendo, that Bank of America is the owner and wasn't just the servicer. Assuming that, we don't know how much Bank of America paid to acquire Merrill Lynch, and whether Bank of America is ultimately going to get a windfall in this particular case. And so, because- How do you, this is a really difficult, I think, conceptual issue, Mr. Coriglio. But if you have a bank that buys another entity for a package sum, and that includes all of its rights and liabilities, and including a portfolio of loans, how does a district court even begin the process of figuring out valuation? Right, and it's interesting the court says that because the government cited a case, U.S. versus Ritchie, and I think the dissenting judge actually had it right, and noted that it's a thorny evidentiary issue. How does the government go about proving that? I mean, bottom line is, the government has the burden to go about proving that. I mean, I would think the way I would do it if I was a prosecutor, would try to figure out how much Bank of America paid to purchase Merrill Lynch, value the, and somehow get that valuation, and try to prorate it out, sort of like- Does it have to go that far? I mean, we have a situation that the entity either buys assets, specific assets, and there may be a dollar number attached to those, or it buys the entity. In which case, doesn't it just simply stand in the shoes of the entity? It's acquired the entity, and did not make an assessment as to each asset within the entity. Right, and if you take it from that perspective, we need to know how much, what it specifically acquired when it acquired the entity, and how much it paid for it. And it was the government's burden to do that, and put on evidence. And what the government didn't do in the second restitution hearing, other than the testimony of Ms. Davids, is put on evidence as to that issue. Thank you. All right, thank you, Mr. Koryglio. Mr. Cronin. Good morning, may it please the court. Assistant United States Attorney Sean Cronin on behalf of the government. Your honors, the district court did not commit clear error in determining by a preponderance of the evidence a reasonable estimate of the loss suffered by the victims in this case, nor did it err in determining who those victims were. With respect to the Bank of America loan, I disagree with Mr. Koryglio that we don't know who owns that loan. The evidence in the file demonstrates that it was originally funded by First Franklin, and thereafter, First Franklin was quickly acquired by Merrill Lynch. When the short sale happens, it's First Franklin Loan Services that approves the short sale, and it's First Franklin Loan Services that, according to the HUD-1, is supposed to receive the payoff of the mortgage loans as a result of that short sale. In terms of the chronology, when is a short sale compared to the purchase, for lack of a better term, of First Franklin by Merrill Lynch? First Franklin was purchased by Merrill Lynch in 2006, I believe December of 2006. The short sale happens in October of 2008. So when First Franklin was acquired, it sort of kept its name as a subsidiary or related entity? I believe that's what Ms. Davids' testimony was at the second restitution hearing. First Franklin continued to function as a subsidiary of Merrill Lynch. So at the time of the short sale, it was First Franklin that suffered the loss. At the time of the restitution hearing, however, by that point... The first or second restitution hearing? Both. Okay. First Merrill Lynch had been acquired by Bank of America, and at that point, there was no active loan owned by anybody. There was a fully realized loss that had been suffered by First Franklin as a division or subsidiary of Merrill Lynch. And that loss in its entirety flew down the stream to Bank of America as the sole legal entity that had a right to acquire that loss. So it never purchased a loan. Indeed, nobody ever purchased a loan, and there is no evidence in the record to suggest that First Franklin ever sold the loan prior to the short sale. Excuse me, but didn't Davids testify during the second hearing, both on cross and on redirect, that First Franklin had never sold the loan? That was testimony that was presented, and that was the basis for the district court's decision, wasn't it? That is correct, and I absolutely agree with that. And there is no evidence contrary to that testimony. Therefore, the court could not have clearly erred when it relied upon that testimony to determine it was First Franklin that owned the loan at the time of the short sale, and then it was Bank of America that is the true victim in this case as a result of this series of corporate mergers by which it acquired Merrill Lynch. Where does the evidence, if it is evidence, of BOA as a servicer come in? Ms. Davids' testimony was that even after the loss is realized, there's still a servicer on the loan in the sense that there has to be somebody maintaining the records. So originally, the servicer was Home Loan Servicing, which was owned by Merrill Lynch. In October of 2010, BAC Home Loan Services purchased Home Loan Servicing, and then in July of 2011, I believe, BAC Home Loan Services was merged into Bank of America. So Bank of America, through corporate acquisitions, acquired both the loss suffered on the loan as well as the servicing history from Home Loan Services to BAC to finally Bank of America. Wait, wait. Okay, let me make sure I have your theory correct. You're saying that with regards to the loan itself, Bank of America is a victim because it purchased Merrill Lynch. Correct. And with regard to the servicing because BAC Home Loans took over Home Loan Servicing. Correct. And ultimately, who is the servicer of the loan really isn't a matter of import in terms of determining who the victim is. It's important in terms of determining where we go to get the records as a practical matter. But in terms of who suffered the loss and who restitution is owed to, that only concerns who owns the loan, or in this case, the fully actualized loss on the loan that was acquired by Bank of America when it purchased Merrill Lynch. And similarly, with respect to the FDIC loan, it stands in the shoes of IndyMac Bank just in the same way that Bank of America stood in the shoes of Merrill Lynch suffering the loss that IndyMac suffered as a result of this loan. Although at the time FDIC acquired the loan, it was still an active loan. The short sale in that case doesn't happen until after FDIC is appointed receiver of IndyMac Bank. And with respect to the valuation of the loss for that loan, the court did not clearly err in setting as a starting point for the reasonable estimate of the loss, the face value of the loan, which was $1,085,000. This is a case where Loan City almost immediately turned around and sold the loan to IndyMac Bank as part of a bulk loan acquisition. Indeed, the loan was funded on December 15th of 2006 within five days, or there's a letter in the file dated five days later, December 20th of 2006, indicating that the loan would be transferred to IndyMac Bank, a letter to the borrower. It's unclear if that letter was ever sent, but the file also demonstrates that by January 3rd of 2007, about two weeks after the loan funds, IndyMac Bank has already begun the process of underwriting the loan to determine whether or not it's going to purchase it. And it underwrites the loan based upon the exact same information that Loan City underwrote the loan, the same value of the property, the same assets and income of the borrowers, as well as their credit reports. Nothing changes in the evaluation from Loan City to fund the loan to when IndyMac decides to purchase the loan. Indeed, Loan City's whole business model was to make money by immediately turning around and selling its loans. If it funded a loan for $1,085,000 and then sold it for less than that a couple of weeks later, it would be losing money as a matter of business. That's not how its business operated. It would turn around and sell these loans, presumably at least for full value, otherwise it would constantly be losing money on its loans. And the reason why IndyMac Bank would pay full-face value, at least for the loan, is because over the course of the loan, based upon the amortization schedule in the loan file, it was going to make over $1.8 million in interest payments in addition to the over $1 million in principal. Under those facts, the court... As a principal is a wash. Exactly. But that indicates why IndyMac was willing to pay the principal amount to acquire the loan, because it was expecting to recoup an additional $1.8 million in interest payments over the subsequent 30 years. Under those circumstances, where there's no indication or evidence that there was any change in circumstance between the funding of the loan and the sale of the loan, the court did not clearly err in determining that the loan was sold for the face value of the loan. Did the government attempt to obtain the actual purchase price for the loan and was not able to do it? That is correct, Your Honor. So, therefore, we were forced to attempt to offer the court a reasonable estimate of what the purchase price was. And based upon the timing of the loan, Judge Kahn, I believe, correctly found that a reasonable estimate was the face value of the loan. There is an agreement, I believe, on your part that the court did err in determining the amount of restitution as to the first loan, correct? That it's off about $26 or so. I believe $27, Your Honor. And so you are asking this court to affirm with the exception of remanding to correct the math errors. Correct. The position. Yes, Your Honor. One last thing, Mr. Cronin. What evidence, testimonial or documentary is there concerning the purchase of Merrill, going back to the first loan, the purchase of Merrill Lynch by Bank of America? Where does that come from? There was testimony at the original trial from Glacies Falcone, who, or I apologize, I believe it was at the second restitution hearing, Ms. Davids testified that Bank of America purchased Merrill Lynch and that that transaction occurred in 2009. I believe that's where the record evidence was in terms of Bank of America acquiring Merrill Lynch. And I don't believe the appellant has ever contested the fact that Bank of America purchased Merrill Lynch. He simply argued that because of that purchase, that affects how we calculate the loss suffered by Bank of America. And as the Fourth Circuit case in Ritchie sets forth, it really has no impact because Bank of America now stands in the shoes of Merrill Lynch. But Ms. Davids testified that there was no information about the price that was paid. That is correct. Page 43 of Record Entry 244. I agree with that, Your Honor. Let me go back to the question I asked you a few minutes ago. I thought that an IndyMac employee testified at trial that there was an Excel spreadsheet that would show the amount that IndyMac paid for each loan. Is that right? Yes, we've never been able to acquire that spreadsheet, Your Honor. But you did try to track that down? Yes. I think this is simply the case of, it's very difficult when there are a number of entities involved, some of which no longer exist, to try and get the documentation. Certainly when we reached out to the FDIC, for instance, they did not provide us with any such spreadsheet. When we reached out to One West Bank to acquire the loan file, it was not in the loan file that was maintained by One West Bank. For the inference you're trying to draw about the proximity of the sale of the loan to the making of the loan, it seems to me there might be a line drawing problem there. How long after, in other words, is it three months, is it six months, after that we would be able to make that inference? I don't think there's a line that you draw in the sand. I think it's a case-by-case determination. And I think one of the key factors is, is there any indication in the evaluation of the purchaser, the downstream purchaser, that there has been a change in circumstances with respect to either the valuation of the loan or the creditworthiness of the lender and their ability to pay back? Here, there is no change based upon the loan file. IndyMacBank agrees to purchase this loan based upon the exact same information that was originally submitted to the original lender. But there are all sorts of reasons why the purchaser might pay less. There might be a volume discount of some sort. There might be an assumption that some percentage of the loans are going to go bad. But that wouldn't explain why the seller would agree to sell for less than the face value. The seller here has just funded a loan for $1,085,000. If it sells it for anything less than that, it's losing money on the deal it just consummated. But if the seller sells every loan, it knows that some percentage of those loans are going to go bad, and it's not going to recoup its interest. Right? Correct. So it should be willing to discount those loans when it sells them in bulk. I just, because... And it also knows, it also knows, if it's selling just one loan file, then I think you're exactly right, because you'd be a pretty bad student of economics if you were selling loans for less than you bought them for. You'd be bankrupt pretty soon. But if you're selling 1,000 loans, you probably realize, and I think this is what Josh Pryor may be getting at, that within that portfolio of 1,000 loans, you probably made some mistakes even in the subprime market, and that some of them are not going to be sold at face value. So if the entire amount, just to use a round number of the portfolio's principal value is 10,000, you know, you may not sell it for a lot more than that if you think that your analyst really went crazy and started even going below your subprime standards. And that goes to the issue that Mr. Koryglia was trying to assert, or at least one of them, that without having an idea of what this transferred for, you're sort of in the world of supposition. I agree that under those circumstances, it wouldn't make sense for, it wouldn't make sense that the original lender might not sell it for greater, or substantially greater than the face value of the $10,000. But it would make no sense for it to sell less, for anything less face value. Yeah, because you're selling in bulk. So how do you know? If you're selling them all together, and there's no differentiation between one or another of the 1,000 loans, you may well be selling several of those loans for less than face value. And some other ones you might be selling way over face value. But ultimately, you're still making money. Right, so ultimately, if you're selling $20 million worth of total loans for $20 million, there really is no differentiation loan by loan. You're just selling the bulk at $20 million. And that is the total face value of all the loans. And you're not going to sell it for less than $20 million because you're losing, because ultimately you're losing money. Right, but how do you know that? And again, maybe the district court and you did not, the government didn't have to go down this far in the details. But how do you know that of that group of portfolio loans, one of them wasn't just a huge mistake by First Franklin. And they said, listen, we're going to sell this for pennies on the dollar, but these other three, we're going to go way over because they're great loans. They shouldn't even be subprime. So these are great loans. And so we'll recoup the loss on this loan with the other two or three. I'll say it this way. There is no evidence that that occurred in this case. And the government's burden was by a preponderance of the evidence. And by the preponderance of the evidence, IndyMac reviewed this loan, determined it was just as worth buying as it was originally worth funding. And the court did not clearly err in determining that was the proper valuation for restitution purposes. According to Mr. Coriglio's brief, and I haven't gone to the record to review this. So I'm just going on his representation. He says that Mr. Sellers, one of the government's analysts, explained that he did not know where the loan first went after First Franklin funded it. If he is right about that testimony, how do you know that the loan belonged to First Franklin when Bank of America acquired Merrill Lynch, which had acquired First Franklin? Because at that time, keep in mind, it's not a loan, it's a loss when Bank of America acquires Merrill Lynch. And that loss is fully realized at the time of the short sale. And the records from the short sale indicate it is First Franklin who owns the loan at that time based upon the HUD-1 indicating that First Franklin is getting the proceeds from the short sale based upon the documents indicating First Franklin was approving the short sale. Therefore, at the time of the short sale, First Franklin owns the loan. And therefore, Bank of America is the one that suffers the loss when it eventually acquires Merrill Lynch. Thank you. Thank you very much, Mr. Cronin. Thank you. The government's argument that there's no indication of evidence of any change in circumstances completely misses the mark and shifts the burden here. The burden, the court already had the information with respect to the transaction for which FDIC is now the victim. And it basically, in the first opinion, sent it back to the district court to conduct an evidentiary hearing, if it wished, to actually put on evidence or of how much that IndyMac actually paid to acquire this loan. And the government concedes that they can't do that. But what happened at the second restitution hearing is Mr. Cronin, instead of providing evidence, just provided argument and tried to shift the burden to the defense. I mean, the court, in the first opinion, laid out some factors that the government could use to try to demonstrate a reasonable estimate in this case. Is there a change in the market conditions two and a half months later being one of them? So the government had the opportunity at the second restitution hearing to actually meet their burden to show that there was no change in circumstances. But wasn't that because at the second restitution hearing there was evidence that there was a different victim, that the first indication was incorrect, that Franklin never sold with regard to the first loan and so you have different factors that would apply to that situation. Isn't that really what happened? The district court said, no, this was all incorrect the first time. We've got it right the second time. Well, the first Franklin, I mean, this whole confusion I think just goes to underscore my point that we really don't know who on these loans, but first Franklin with respect to the FDIC, it wasn't first Franklin, it was IndyMac. So they didn't present any evidence to show that there was no change in circumstances, not on the defense, it's the government's burden. And with respect to your honor's point, going back to first Franklin and the record at the second restitution hearing, the question by the prosecutor was, is there any evidence that first Franklin sold this loan at any time? Answer, not in my review, no. But that's misleading because the only records that Ms. Davids had was the servicing part of the file. That's how Lou Sellers actually obtained the file. He went on this MERS database and actually got the file from Bank of America and he had no idea of how it got from first Franklin to Bank of America. So when Ms. Davids is reviewing the records, she's reviewing the service records. And specifically, I asked her the question, did she review the records showing who the owner of the loan was? And she just said, it wasn't relevant to my inquiry. And that goes to show you that we have no idea who owned this loan. She testified that there was no evidence in the record that she had reviewed that the loans were ever sold. Right, but she only reviewed a limited record. So she's maybe accurate, but it's still misleading. If it really goes to the weight of the evidence then, doesn't it, that the court had to base its decision on? Well, yeah, it does go to the weight of the evidence. Thank you. Thank you, Mr. Kariglian. Thank you. We know that you were court appointed and we certainly do appreciate your service, not only for your client, but to the court. We really do appreciate it. Thank you. Thank you.